## VERNICK *v.* DETROIT, MONROE & TOLEDO SHORT LINE RAILWAY.

1. RAILROADS — NEGLIGENCE — DUTY OF MOTORMAN TO RECOGNIZE SIGNAL AT NIGHT.

   Where a white light is swung in front of an interurban electric car, traveling at great speed at night, it is the duty of the motorman to slow his car down to the point where he can stop if the exigencies of the situation demand it, and the fact that the car is a limited one, and that attempts by the same means to stop it at local stops are not infrequent, does not excuse the motorman from disregarding the signal.

2. SAME—DISREGARD OF SIGNAL PRESENTS QUESTION FOR JURY.

   In an action against an interurban electric railway company for damages to plaintiff's truck which was struck while stalled on defendant's tracks, evidence that a lantern was swung across the track when the car was upwards of half a mile away but that the motorman disregarded the signal until within 400 feet of the truck, when it was too late to avoid the collision, *held*, to justify the submission of the question of defendant's negligence to the jury.

Error to Wayne; Hunt (Ormond F.), J. Submitted April 11, 1923. (Docket No. 52.) Decided October 1, 1923.

Case by Maurice Vernick against the Detroit, Monroe & Toledo Short Line Railway for damages to plaintiff's truck. Judgment for plaintiff. Defendant brings error. Affirmed.

*William G. Fitzpatrick* (*William E. Tarsney*, of counsel), for appellant.

*Barbour, Field & Martin* (*Henry C. L. Forler*, of counsel), for appellee.

BIRD, J.    Plaintiff was operating a three-ton truck between Detroit and Toledo over the Dixie highway. On the evening of April 10, 1920, he was on his way to Detroit with a load of castings.    When about three miles south of Monroe at the point where defendant's line crosses the highway plaintiff drove so close to the edge of the pavement in order to allow cars going in the opposite direction to pass him, that his right rear wheel slipped from the pavement into the soft earth and stalled on the track.    While attempting to get the wheel back on to the pavement a Mr. Crocker, who lived nearby, came up the track with a lantern. He advised plaintiff that a limited car was due in a few moments and that he would go down the track and signal it to stop.    He succeeded in getting down the track about 400 feet when the car passed him running at a high rate of speed.    He waved his lamp across the track when the car was upwards of half a mile away, but it did not slacken its speed.    When the car passed him he threw his lantern at it in an effort to attract the attention of the motorman.    After passing him the motorman made an effort to stop the car, but without avail.    A collision resulted in which the truck was badly damaged.    This suit was brought to recover for the injuries to the truck.    Judgment passed for plaintiff and defendant assigns error.

Defendant discusses three propositions.    In substance they raise the questions whether the speed of the car was excessive and whether the motorman of the interurban was negligent in disregarding the signal until it was too late to avoid a collision.    Counsel argue that it was not negligent for the motorman to disregard the white light.    In justification of such disregard it is shown that it was not unusual for persons who were desirous of becoming passengers to attempt, by the same means, to stop the limited cars

at local stops, and that inasmuch as Crocker was not far from a local stop the motorman took it for granted that the signal was being given at the local stop.   We can hardly accept this conclusion as a matter of law. Perhaps instances may occur which would justify the motorman in refusing to stop after receiving a signal where he can see that the way is clear.   But where a white light is swung across the track at night it would be the duty of the motorman to slow his car down to the point where he could stop if the exigencies of the situation should demand it.   Suppose Mr. Crocker had, instead, discovered a defective bridge or a torn-up track, how could he have done more to stop the car?   People along the way are not possessed of red lights.   They have to use in emergencies such lights as they possess, and because no red light was displayed defendant could hardly insist with reason that he was justified in plunging ahead at full speed because it was a limited car and the public demanded rapid transit.   The reasonably prudent locomotive engineer, motorman or automobile driver, when signaled to stop in the nighttime, slows his vehicle to the point which will permit him to make a quick stop when he reaches the signal, if necessary.   If he does less than this he does less than his duty.

The motorman of the car admitted he was traveling 45 to 50 miles per hour when he got the signal and that he first saw it nearly a mile away.   The track was straight and paralleled the highway until it crossed it.   Beyond the curve his light would not disclose whether there was anything on the track.   It then became his duty to reduce his speed until he could see the track and assure himself that it was safe to proceed.   Had he done so in the instant case there would have been no collision.   The testimony of Mr. Crocker shows no effort was made to reduce the speed

of the car until after it passed him.    The car was then within 400 feet of the truck.    The motorman's testimony is in conflict with this.    The question whether the car was operated with reasonable care was clearly one for the jury and the trial court was in no error in submitting it.    We think it unnecessary to discuss the question of speed.

The judgment will be affirmed.

FELLOWS, McDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.    WIEST, C. J., did not sit.